```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------X
LUMBERMENS MUTUAL CASUALTY COMPANY,
a/s/o FRED MOHEBAN ORIENTAL
RUG COMPANY, INC.,

                Plaintiff,
                                        03 CV 5819 (KMW) (MHD)

        -against-                              ORDER

BANCO ESPANOL de CREDITO, S.A.,

                Defendant.
-------------------------------------X
BANCO ESPANOL de CREDITO, S.A.,

                Third-party Plaintiff,

        -against-

CUNO, INC. and A-Z VENDING SERVICES CORP.,

                Third-party Defendant.
-------------------------------------X
BANCO ESPANOL de CREDITO, S.A.,

                Second Third-party Plaintiff,

        -against-

OASIS CORP.,

                Second Third-party Defendant.
-------------------------------------X
```

WOOD, U.S.D.J.:

## I. Overview

Plaintiff insurance company Lumbermens Mutual Casualty Company ("Lumbermens") brings this action as subrogee of Fred Moheban Oriental Rug Company, Inc. ("Moheban"), for damages

1

suffered by Moheban, on July 15, 2003, to its premises and carpet inventory.  Plaintiff claims that the damage was caused by a leak from a water cooler located in the offices of defendant Banco Espanol de Credito, S.A. ("the Bank"), located one floor above Moheban's location at 730 Fifth Avenue in Manhattan.  Lumbermens paid Moheban $325,000, for the loss and now seeks indemnification from the Bank.  The Bank in turn filed a third-party complaint against A-Z Vending Services Corporation ("A-Z") - the company that leased the water cooler to the Bank and was paid by the Bank to maintain it - and a second third-party complaint against Oasis Corporation ("Oasis"), the company that sold the water-cooler to A-Z.[1]

The parties have filed several motions.  Plaintiff has moved to amend its pleadings to add: 1) claims directly against A-Z and Oasis for negligence, products liability, breach of warranty, and breach of contract; and 2) a claim against the Bank and A-Z for negligent (and possibly intentional) spoliation of evidence.  A-Z has moved to amend its third-party answer to assert a counterclaim for contractual indemnification against the Bank.

In addition, the Bank has moved for summary judgment against Plaintiff.  A-Z has moved for summary judgment against the Bank's

---

[1] The Bank originally brought its third-party complaint against Cuno, Inc., but voluntarily dismissed its third-party claims against Cuno; A-Z voluntarily dismissed its cross-claims against Cuno as well.

third-party claims and any cross-claims.[2]  Oasis has moved for
summary judgment against the Bank's third-party claims and any
cross-claims.

On September 30, 2005, Magistrate Judge Michael H. Dolinger
issued a Report and Recommendation (the "Report"), recommending
that: 1) Plaintiff's motion to amend be granted in part and
denied in part; 2) A-Z's motion to amend its answer to the Bank's
third-party complaint be granted; 3) the Bank's summary judgment
motion be granted in part and denied in part; and 4) A-Z's and
Oasis's summary judgment motions be denied.

For the reasons set forth below, the Court adopts the Report
only in part.  Plaintiff's motion to amend its complaint is
granted in part and denied in part; A-Z's motion to amend its
third-party answer is denied as moot; the Bank's motion for
summary judgment is granted; and A-Z's and Oasis's motions for
summary judgment are denied.  Regarding Plaintiff's motion to
amend, specifically, it is granted insofar as Plaintiff seeks to
assert claims of products liability (including failure to warn),
and negligent installation and maintenance, against A-Z, and

---

[2] Although A-Z styled its motion as requesting that the Bank's
third-party complaint, and Oasis's cross-claims, be dismissed, A-
Z brings this motion pursuant to Rule 56 of the Federal Rules of
Civil Procedure, and filed an accompanying Rule 56.1 Statement of
Undisputed Facts.

claims of products liability (including failure to warn), and
negligent design and manufacture, against Oasis.

## II. Standard of Review

The Bank, A-Z, and Oasis have filed objections to the
Report.  Plaintiff has filed a response to these objections, but
no objections of its own; rather, Plaintiff urges the Court to
adopt the Report in its entirety.  See Plaintiff's Response to
Objections to the Report and Recommendation ("Pl. Resp.") 3.  The
Court reviews the Report's recommendations as to the non-
dispositive motions to amend, insofar as objections have been
filed as to those recommendations, to determine if they are
"clearly erroneous or contrary to law."  Fed. R. Civ. P. 72(a).[3]
The Court reviews de novo the portions of the Report regarding
the dispositive motions for summary judgment, insofar as
objections have been filed to the Report's recommendations as to
those summary judgment motions.  See Fed. R. Civ. P. 72(b).

Furthermore, as to those portions of the Report to which no
objections have been filed, the Second Circuit "ha[s] adopted the

---

[3] It should be noted that, although the Report purports to make
"recommendations" as to the motions to amend, Magistrate Judge
Dolinger's decisions as to these non-dispositive motions are not
recommendations, but rather dispositions of the matters, under
Rule 72(a) of the Federal Rules of Civil Procedure.  But, to
avoid confusion, the Court will use the Report's nomenclature.

rule that failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision," <u>Small v. Sec'y of Health & Human Servs.</u>, 892 F.2d 15, 16 (2d Cir. 1989); "[t]he Supreme Court upheld this practice, at least when the parties receive clear notice of the consequences of their failure to object," <u>id.</u> (citing <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985)).  The Report specifically warned the parties that "[f]ailure to file timely objections may constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals." Report 70.

## III. Analysis

### A. Motions to Amend

"A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served . . . . Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  Rule 15(a) has a "lenient standard."  <u>Parker v. Columbia Pictures Indus.</u>, 204 F.3d 326, 340 (2d Cir. 2000).  But "where amendment would be futile, denial of leave to amend is proper."

In re Tamoxifen Citrate Antitrust Litig., 429 F.3d 370, 404 (2d Cir. 2005).[4]  Thus, when a plaintiff seeks to file a proposed amended complaint in response to a motion to dismiss the original complaint pursuant to Rule 12(b)(6), a district court "need not allow [the proposed amended complaint's] filing if it does not state a claim upon which relief can be granted," provided that "[t]he adequacy of the proposed amended complaint . . . is . . . judged by the same standards as those governing the adequacy of a filed pleading."  Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991).

But when a plaintiff seeks to amend the complaint "in response to a Fed. R. Civ. P. 56 motion for summary judgment, and the parties have fully briefed the issue whether the proposed amended complaint could raise a genuine issue of fact and have presented all relevant evidence in support of their positions," then, "even if the amended complaint would state a valid claim on its face, the court may deny the amendment as futile when the evidence in support of the plaintiff's proposed new claim creates no triable issue of fact and the defendant would be entitled to judgment as

_____

[4] A court may also deny a motion for leave to amend a complaint for "such reasons as undue delay, bad faith . . . and perhaps most important, the resulting prejudice to the opposing party." Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc., 404 F.3d 566, 603-04 (2d Cir. 2005) (internal quotation marks omitted). Here, in opposing Plaintiff's motion to amend, A-Z and Oasis primarily argued that the amendments would be futile.  The Report also states that Oasis made "conclusory assertions . . . of bad faith and prejudice," which the Report rejects.  Report 27. Oasis does not object to this specific portion of the Report.

a matter of law under Fed. R. Civ. P. 56(c)." <u>Milanese v. Rust-Oleum Corp.</u>, 244 F.3d 104, 110 (2d Cir. 2001).

In the instant case, insofar as Plaintiff's motion to amend seeks to amend the complaint to add claims against A-Z and Oasis, it has not been filed "in response" to a motion for summary judgment as to Plaintiff's complaint (because A-Z's and Oasis's summary judgment motions were filed as to the Bank's third-party claims against them).[5]  However, because discovery is complete, and to the extent that the parties have "briefed the issue whether the proposed amendments could raise a genuine issue of fact and have presented all relevant evidence in support of their positions," <u>Milanese</u>, 244 F.3d at 110, the amended pleadings may be considered under the summary judgment standard when determining whether the amendments would be futile.[6]

    <u>1. Plaintiff's Motion to Amend</u>

Plaintiff appears to move to amend its pleadings to add: 1) claims directly against A-Z and Oasis for strict products liability (based on the distribution of an allegedly defective

---

[5] Similarly, A-Z's motion to amend its third-party answer was not filed "in response" to a motion for summary judgment.

[6] In discussing how the Report addresses the arguments of futility advanced by A-Z and Oasis in opposition to Plaintiff's motion to amend, the Report states: "The purported lack of evidence for a new claim is . . . not ordinarily a basis to find futility on a motion to amend, but since there are pending summary-judgment motions, we will also refer, at least in passing, to the current evidentiary record on those other motions."  Report 28.

product and an alleged failure to warn of hazards), negligence
(including negligent manufacturing, installation and maintenance,
and negligent design and manufacture, of the water-cooler system
and filter), breach of warranty, and breach of contract; and 2) a
claim against the Bank and A-Z for negligent (and possibly
intentional) spoliation of evidence.[7]  The Report recommends: 1)

---

[7] As the Report notes, the claims that Plaintiff seeks to add in
its amended complaint as to A-Z and Oasis are not clearly
alleged, and have basically been modeled on the Bank's third-
party claims.  Report 26.  But the Report notes that Plaintiff
seeks to add "various product-liability, negligence and breach-
of-warranty and contract claims against A-Z and Oasis."  Report
26.  Specifically, the Report

> discern[s] in the proposed First Amended
> Complaint claims against A-Z and Oasis for
> negligent manufacturing, installation and
> maintenance of the water-cooler system and
> filter (the First, Third and Fifth Causes of
> Action), a claim for breach of contract (the
> Fifth Cause of Action), and claims for breach
> of implied warranty (the Fifth and Seventh
> Causes of Action) (referring to water-cooler
> system as "unfit for the intended purpose"),
> negligent design and manufacture (Sixth Cause
> of Action), failure to warn (Sixth Cause of
> Action), and breach of express warranties
> (Seventh Cause of Action).

Report 27.  See also Report 4 (stating that Plaintiff's proposed
new claims against A-Z and Oasis include claims for "negligent
installation and maintenance of the water-cooler system, product
liability (including a claimed failure to warn of hazards) and
breach of express and implied warranties").
     In referring to Plaintiff's proposed "products liability"
claims, the Report appears to be referring more specifically to
"strict products liability" claims.  See Report 26
(distinguishing between the "product-liability, negligence and
breach-of-warranty and contract claims" that Plaintiff seeks to
bring against A-Z and Oasis); see also Report 30, 34-36 (citing
cases involving the doctrine of strict products liability, such
as Godoy v. Abamaster of Miami, Inc., 302 A.D.2d 57, 60-61, 754

<u>denying</u> Plaintiff's motion, primarily on the basis of futility, insofar as it seeks to add: a) claims of breaches of warranties and contract against A-Z and Oasis, b) a claim of negligent installation and maintenance against Oasis, and c) a claim against the Bank and A-Z for spoliation of evidence; but 2) <u>granting</u> Plaintiff's motion insofar as it seeks to add: a) claims of products liability (failure to warn) and negligent installation and maintenance against A-Z, and b) claims of products liability (failure to warn) and negligent design and manufacture against Oasis.

> a. <u>Proposed new claims against A-Z and Oasis for</u>
> <u>breaches of warranties and contract, against</u>
> <u>Oasis for negligent installation and</u>

---

N.Y.S.2d 301, 304-05 (2d Dept't 2003); <u>Brumbaugh v. CEJJ, Inc.,</u> 152 A.D.2d 69, 70-71, 547 N.Y.S.2d 699, 701 (2d Dep't 1989); <u>Codling v. Paglia</u>, 32 N.Y.2d 330, 345 N.Y.S.2d 461, 298 N.E.2d 622 (1973)).  Indeed, Plaintiff appears to be attempting to allege strict products liability claims in its proposed amended complaint.  <u>See</u> Plaintiff's Memorandum of Law in Support of Motion for Leave to Amend its Complaint 4 (stating that the allegations in the proposed amended complaint are "substantially the same" as the Bank's third-party claims, which include a cause of action for strict products liability).  Furthermore, although the Report seems to characterize the proposed products liability claims as ones for "failure to warn," these proposed claims also appear to be based on the allegation that A-Z and Oasis distributed a defective product, and more specifically that the product had some type of design defect.  <u>See</u> Proposed First Amended Complaint (Sixth Cause of Action), attached as Exhibit 12 to Affidavit of Matthew T. Loesberg in support of Plaintiff's motion for leave to amend its Complaint.  Indeed, the Report appears to conclude that Plaintiff may bring a products liability claim based on design defect against Oasis, Report 35-36, and this is the focus of Oasis's objections regarding Plaintiff's motion to amend, as discussed below.

> maintenance, and against the Bank and A-Z for spoliation

Plaintiff has filed no objections to the Report; indeed, it urges the Court to adopt the Report in its entirety.  Thus, Plaintiff appears to have abandoned those parts of its motion to amend that the Report recommends denying.  In any event, the Court does not find the Report's recommendation on this point to be clearly erroneous or contrary to law.  Thus, Plaintiff's motion to amend is denied insofar as it seeks to: 1) add claims of breaches of warranties and contract against A-Z and Oasis, and a claim of negligent installation and maintenance against Oasis; and 2) add a claim for spoliation of evidence against the Bank and A-Z.

> b.   Proposed new claims against A-Z and Oasis for products liability and negligence

A-Z and Oasis have filed objections to the Report insofar as it recommends granting Plaintiff's motion to amend to assert new claims against A-Z and Oasis.  Thus, the Court reviews those portions of the Report to determine whether they are "clearly erroneous or contrary to law."

### i.  Strict Products Liability

"Under New York law,[8] it is well settled that a manufacturer may be held liable for placing into the stream of commerce a

---

[8] New York law is applicable in this diversity action.

10

defective product which causes injury." Gebo v. Black Clawson Co., 92 N.Y.2d 387, 392, 703 N.E.2d 1234 (N.Y. 1998). This "burden of strict liability" is also imposed on "a seller, dealer or distributor engaged in its normal course of business" who sells such a "defective product," id., as well as on a "lessor who introduces a defective product into the marketplace," Winckel v. Atlantic Rentals & Sales, Inc., 557 N.Y.S.2d 951, 952 (2d Dep't 1990), accord Wengenroth v. Formula Equipment Leasing, Inc., 11 A.D.3d 677, 680, 784 N.Y.S.2d 123, 126 (2d Dep't 2004). A mere service provider, however, is exempt from liability for harm caused by a faulty product. Brumbaugh v. CEJJ, Inc., 152 A.D.2d 69, 71, 547 N.Y.S.2d 699 (3d Dep't 1989); Van Iderstine v. Lane Pipe Corp., 89 A.D.2d 459, 463, 455 N.Y.S.2d 450 (4th Dep't 1982).

> In New York, there are three distinct claims for strict products liability: (1) a manufacturing defect, which results when a mistake in manufacturing renders a product that is ordinarily safe dangerous so that it causes harm, Victorson v. Bock Laundry Mach. Co., 37 N.Y.2d 395, 373 N.Y.S.2d 39, 335 N.E.2d 275 (1975); (2) a warning defect, which occurs when the inadequacy or failure to warn of a reasonably foreseeable risk accompanying a product causes harm, Torrogrossa v. Towmotor Co., 44 N.Y.2d 709, 405 N.Y.S.2d 448, 376 N.E.2d 920 (1978); and (3) a design defect, which results when the product as designed is unreasonably dangerous for its intended use, Voss v. Black & Decker Mfg. Co., 59 N.Y.2d 102, 463 N.Y.S.2d 398, 450 N.E.2d 204 (1983).

McCarthy, 119 F.3d 148, 154-55 (2d Cir. 1997).  To establish strict products liability, furthermore, a plaintiff must show that the defect was a "substantial factor" in causing plaintiff's injury.  Voss v. Black & Decker Mfg. Co., 59 N.Y.2d 102, 106, 450 N.E.2d 204, 208 (1983) (internal quotation marks and citation omitted).

A-Z

A-Z argues that Plaintiff cannot assert product-liability claims against it because, contrary to Plaintiff's allegations, A-Z did not sell or distribute the product that allegedly caused the damage, but rather acted merely as a service provider.  A-Z Objections 6-7.[9]  Thus, A-Z argues that the amendment would be futile because it lacks an evidentiary basis.  The Report's conclusion that there is evidence in the record indicating that A-Z sold water filters (for use in the water cooler) to the Bank, see Report at 29-30 (citing Affidavit of Richard Breit, Officer of Banco Espanol, dated July 20, 2004 ("Breit Aff."), attached as Exhibit B to Affidavit of Deborah Del Sordo, dated September 17, 2004, in support of the Bank's motion for summary judgment ("Del

_____

[9] The Report noted that "[t]his issue is not addressed in the pending summary-judgment motion against plaintiff, and hence is not properly considered on plaintiff's Rule 15 motion, since A-Z is arguing an evidentiary question."  Report at 29.  The Report went on to find that, "[i]n any event, the record created on the various summary-judgment motions demonstrated without meaningful dispute that A-Z did sell the water filters to the bank."  Id. As noted earlier, the evidentiary record may be considered here in determining whether Plaintiff's motion to amend would be futile.

Sordo Aff.")), is not clearly erroneous.  The deposition
testimony to which A-Z points appears to somewhat contradict this
evidence.  See Deposition of Mitchel Sperling ("Sperling Dep.")
20-22 (stating that A-Z purchased the filters from Oasis and
arranged to have them changed in the water coolers used by the
Bank), attached as Exhibit A to Affirmation of Dara L. Rosenbaum,
dated Oct. 25, 2004, in opposition to Plaintiff's motion to amend
its complaint (Rosenbaum Aff.).[10]  But, because there appears to
be a genuine issue of fact as to this issue, Plaintiff's
amendment to add a claim of products liability against A-Z would
not be futile.


    Oasis

    In finding that Plaintiff may assert a products liability
claim against Oasis, the Report rejects Oasis's argument that
"there is not evidence that the water-cooler system and filters
were improperly designed or that any warnings should have been
given."  Report 34.[11]  The Report finds that there is evidence in

---

[10] It does not contradict it very strongly, insofar as the
Sperling deposition does not categorically state that A-Z did not
sell the filters to the Bank.  Furthermore, the record also
indicates, and A-Z affirms, that A-Z leased the water cooler to
the bank.  See Breit Aff.; Rosenbaum Aff. ¶ 20.  As a lessor of a
defective product which is alleged to have caused injury, A-Z
could be held strictly liable.

[11] The Report notes that Oasis's argument "rests on evidentiary
contentions, and is therefore not ordinarily a basis for denying
a motion to amend," Report at 34, but the Report then goes on to
consider the evidentiary record, because Oasis has filed a

the record that the water filter malfunctioned, because the Bank proffered an affidavit by one of its officers, Richard Breit, annexing a letter from the Vice-President of A-Z, Mitchel A. Sperling, in which the latter states that his technician determined that the leak from the water cooler was caused by a burst water filter.  Report 35 (citing Breit Aff. ¶ 2, and annexed Letter from Mitchel A. Sperling, Vice President of A to Z Vending Services Corp., to Richard J. Breit, Banco Espanol de Credito, SA (July 15, 2002)).  The Report also finds that "there appears to be some factual basis for plaintiff's proposed claim of a failure to warn" because the engineering representative of Oasis, Ronn J. Dudley, testified that an element of the water filters, referred to as the "O-rings," needed to be periodically lubricated and that a failure to perform such lubrication could cause the rings to malfunction, resulting in leakage, but there were apparently no special warnings provided to end-users about the need to lubricate the rings and the consequences of failing to do so.  Report at 35 (citing Deposition of Ronn J. Dudley ("Dudley Dep.") 80-82, 93-94, 97-98, 101-02, attached as Exhibit E to Rosenbaum Aff.).  Furthermore, the Report rejects Oasis's argument that any claim for design defect, or other type of

---

summary judgment motion, id. at 34-35, and concludes that there is a factual basis for Plaintiff's proposed claim against Oasis, id. at 35-36.

products liability claim, requires evidence from an expert witness – stating instead, based on <u>Halloran v. Virginia Chemicals, Inc.</u>, 41 N.Y.2d 386 (1973), that "a design-defect claim may be established without proof of the particular defect," and finding that "the massive leakage of water from the water cooler at a time when no one was on the premises" indicated that the product was defective, due to "a design defect or other fault attributable to its supplier and not to the end-use customer." Report at 36.[12]

Oasis again asserts that there is no admissible evidence to support a claim that the leak originated from a burst filter in the water cooler.  Oasis contends that the evidence relied on by the Report in concluding otherwise – specifically, the Breit Affidavit, referring to the letter from Mr. Sperling, which in turn states that "[h]is technician was dispatched to the [the Bank's] offices" and "[i]t was determined that the leak was caused by a burst filter in the water cooler" – is inadmissible

---

[12] The Report finds that Oasis cannot be liable for a manufacturing defect, because Oasis did not manufacture the filters, but can potentially be liable for a design defect or a failure to warn.  Report at 34 n.14.  The Court notes that Oasis, as the distributor of the filter, could also be potentially liable for a manufacturing defect in the filter even though it did not manufacture the product, see <u>Putnick v. H.M.C. Assocs.</u>, 137 A.D.2d 179, 183-184 & n., 529 N.Y.S.2d 205, 207-208 & n. (3d Dep't 1988); but because the Report did not find this, and because no objections on this point have been submitted, the Court will not address this issue.

hearsay evidence.[13]  See Oasis Objections 6-9.  Oasis did not make this hearsay argument in opposing Plaintiff's motion to amend.  Therefore, insofar as this argument was not before the Magistrate Judge, it need not be considered.  See Robinson v. Keane, No. 92 Civ. 6090, 1999 WL 459811, *4, 1999 U.S. Dist. LEXIS 9766, *11 (S.D.N.Y. June 29, 1999) ("An objecting party may not raise new arguments that were not made before the Magistrate Judge.").  In any event, the statement contained in Sperling's letter appears to be an admission by a party-opponent and therefore not hearsay.[14]  See Fed. R. Evid. 801(d)(2).  It also seems that, even if it constituted hearsay, it would fall under the exception set forth in Rule 803(2) of the Federal Rules of Evidence.

Oasis also objects to the Report's statement that Plaintiff need not show a specific design defect to establish a design-defect claim.[15]  Oasis Objections 3-5.  Oasis argues that, under

---

[13] The technician in question was Francis Ravalier.  Sperling Dep. 27-28.  Ravalier testified inconsistently, in his deposition, that he "did not see" a burst filter and that he "[could not] remember" if he saw a burst filter.  Deposition of Francis Ravalier ("Ravalier Dep.") 21, attached as Exhibit C to Rosenbaum Aff.

[14] Plaintiff has also indicated that it intends to subpoena Sperling to testify at trial.  Pl. Resp. 5.

[15] As Oasis notes, in this case, the allegedly defective filter was destroyed or lost shortly after the incident, allegedly by the Bank or A-Z; therefore, Plaintiff cannot use the filter itself to prove a specific design defect.  Oasis Objections at 6.

16

Halloran, 41 N.Y.2d at 388, in order to advance a products liability claim without evidence of a specific defect, a plaintiff must not only prove that the product did not perform as intended (first prong), but also rule out all other causes of the accident not attributable to the defendant (second prong).  Oasis contends that, although the Report finds that the leak that is the subject of this lawsuit indicates that the water cooler did not perform as intended, Plaintiff has not met, and cannot meet, the second prong of the Halloran test, because Plaintiff claims that A-Z is liable for negligent maintenance of the water cooler, and the Report points out that A-Z undertook the maintenance of the cooler and filter, Report 58.

Under New York law, a "'plaintiff is not required to prove the specific defect"; rather, a defect may be proved circumstantially, and "'inferred from proof that the product did not perform as intended.'" Jarvis v. Ford Motor Co., 283 F.3d 33, 44 (2d Cir. 2002) (quoting Codling v. Paglia, 32 N.Y.2d 330, 345 N.Y.S.2d 461, 298 N.E.2d 622 (1973)).  Furthermore, Halloran involved an appeal from a jury verdict after a trial.  A plaintiff is not required to meet Halloran's second requirement sets forth at the summary judgment stage.  Putnick v. H.M.C. Assocs., 137 A.D.2d 179, 183-84, 529 N.Y.S.2d, 207-08 (3d Dep't 1988).  Rather, a plaintiff defeats summary judgment, in a products liability action, by showing that there is a genuine

issue of material fact as to the cause of the injury.  See
Buckley v. General Motors Corp., No. 98 Civ. 4366, 2004 WL
725933, at *2, *4 n.3, 2004 U.S. Dist. LEXIS 5654, at *6, *10 n.3
(S.D.N.Y. Apr. 2, 2004) (quoting the language from Halloran but
subsequently noting that "whether the accident was caused by an
unknown manufacturing defect or Plaintiff's own actions is a
disputed issue of fact not properly resolved at the summary
judgment stage").[16]  Here, even if a summary judgment standard is
applied to determine whether the amendment would be futile, there
is sufficient evidence in the record to show that the cause of
the leak is a disputed issue of fact, as further discussed below.

In addition, Oasis contends that Plaintiff must, and has
failed to, proffer an expert witness to testify that the bursting
of a water cooler filter could have been a proximate cause of the
alleged water leak.  But in a products liability case, "[e]xpert
testimony with reference to proximate causation is not always
required"; rather, a trier of fact can find "proximate causation
from its consideration of the characteristics of the [product]
and plaintiff's description of how the accident happened."  Voss,

_____

[16] Under Oasis's theory, a plaintiff would be barred at the
pleading stage from even alleging any claim other than a design
defect, even before the plaintiff undertook discovery to attempt
to establish the cause of the accident.  Furthermore, Oasis's
argument implicitly relies on the assumption that Plaintiff will
prove its negligent maintenance claim against A-Z; but if
Plaintiff does not do so, this possible cause will be eliminated.

59 N.Y.2d at 110-11, 450 N.E.2d 204 at 209.  Accord Buckley, No.
98 Civ. 4366, 2004 WL 725933, at *3, *4, 2004 U.S. Dist. LEXIS
5654, at *4, *9; see also id., 2004 WL 725933, at *3, 2004 U.S.
Dist. LEXIS 5654, at *9 ("'Circumstantial evidence, expert
testimony, or common knowledge may provide a basis from which the
causal sequence may be inferred.'") (quoting W. Page Keeton et
al., Prosser & Keeton on the Law of Torts § 41, at 270 (5th ed.
1984)).  "It is well settled that expert testimony is unnecessary
in cases where jurors 'are as capable of comprehending the
primary facts and of drawing correct conclusions from them as are
witnesses possessed of special or peculiar training.'" Wills v.
Amerada Hess Corp., 379 F.3d 32, 46 (2d Cir. 2004) (quoting Salem
v. United States Lines Co., 370 U.S. 31, 35 (1962)).  See, e.g.,
Buckley, No. 98 Civ. 4366, 2004 WL 725933, at *3-*4 (finding that
when a plaintiff was to testify that her vehicle veered and
leaned in a direction in which she did not steer it, did not slow
down when she applied the brake, and then rolled over, the
plaintiff did not need to introduce expert testimony to support
her design defect claim); Ulfik v. Metro-North Commuter R.R., 77
F.3d 54, 59-60 (2d Cir. 1996)[17] (finding that "the trier of fact

---

[17] In Ulfik, the Court applied a "relaxed standard of proof
concerning causation" because the action was brought under the
Federal Employers' Liability Act.  77 F.3d at 58.  But in finding
that expert testimony was not necessary, the Court relied on
general tort principles, citing the section of Prosser & Keeton
on the Law of Torts quoted above.

could reasonably determine, without expert testimony, that
prolonged exposure to paint fumes would cause headache, nausea,
and dizziness").[18]  In this case, the claimed causal nexus does
not appear to be so complex as to require expert testimony.
Plaintiff was not present at the time of the accident, but there
is evidence in the record supporting the claim that a burst
filter could have caused the leak – including the statement in
Sperling's letter, the testimony of Ronn Dudley that failure to
lubricate the O-rings could cause them to deform, possibly
resulting in leakage, and the testimony of Francis Ravalier, the
technician individual who maintained the water cooler, that a
burst or cracked filter can cause a leak, Ravalier Dep. 21-22.[19]
A trier of fact could therefore reasonably conclude, without

---

[18] By contrast, "[w]here, however, the nexus between the injury
and the alleged cause would not be obvious to the lay juror,
'[e]xpert evidence is often required to establish the causal
connection between the accident and some item of physical or
mental injury.'"  Wills, 379 F.3d at 46 (quoting Moody v. Maine
Cent. R.R. Co., 823 F.2d 693, 695 (1st Cir. 1987); alteration in
Wills).  See, e.g., id. (finding, in a case where plaintiff
alleged that decedent's illness and death were caused by his
exposure to hazardous chemicals, that expert testimony regarding
the "causal link between exposure to toxins and other behavior
and squamous cell carcinoma" was necessary); Barnes v. Anderson,
202 F.3d 150, 159 (2d Cir. 1999) (noting usual "requirement that
plaintiffs produce expert medical evidence in order to prove
proximate causation of medical injury" and finding that "a
miscarriage is the sort of complex injury for which expert
medical evidence of causation is required").

[19] Although, as noted earlier, Ravalier testified that he did not
notice that, or could not remember if, the filter at issue was
cracked or burst.

expert testimony, that a burst filter could cause the leak.
Thus, Plaintiff's failure to offer expert witness testimony would
not in and of itself render futile Plaintiff's addition of a
claim of products liability against Oasis.

Oasis does not offer separate objections to the Report's
conclusion that Plaintiff may amend its complaint to add a
failure to warn claim against Oasis.  Oasis refers in passing, in
its argument concerning the need to show a specific design
defect, to testimony by Dudley indicating that Oasis's
instruction materials required the lubrication of the "O-rings."
Oasis Objections 4 (citing Dudley Dep. 88:15-22).  But Oasis does
not dispute the Report's finding that there were apparently no
special warnings provided to end-users about the need to
lubricate the rings and the consequences of failing to do so.[20]

---

[20] In its objections to the Report's recommendation that Oasis's
summary judgment motion be denied, Oasis addresses the "failure
to warn" claim (brought by the Bank) more specifically.  Oasis
argues that the risk that a leak of the magnitude alleged by
Plaintiff here would result from a failure to lubricate the "O-
rings" was an unforeseeable risk, and Oasis can therefore not be
held liable for failure to warn against such a risk.  Oasis
Objections 15-16.  But Oasis's argument that this risk was not
foreseeable is contradicted by the testimony, pointed to by
Oasis, of Ronn J. Dudley, Oasis's engineering representative, who
testified that failure to periodically lubricate the "O-rings"
could cause it to "fold, kink, or deform," and that, if this
happened, it was possible that a filter would leak.  Oasis
Objections 16 (citing Dudley Dep. 79:23-80:16, 81:22-82:5).
Oasis's argument that Dudley did not testify that a leak would
definitely result, id., is inapposite: a "risk," by definition,
is not a certain result but a possible result.  Furthermore, if
it was reasonably foreseeable that a leak would result, then it

In any event, the Court finds no clear error in the Report's conclusion that Plaintiff may amend its complaint to add a "failure to warn" claim against Oasis.

For the reasons stated above, the Court does not find to be "clearly erroneous or contrary to law" the Report's conclusion that Plaintiff may amend its complaint to add strict products liability claims against A-Z and Oasis.

### ii.  Negligence

<u>A-Z</u>

A-Z argues that it cannot be held responsible for any

---

was also reasonably foreseeable that a leak of the magnitude alleged here would result, insofar as it is foreseeable that a leak could cause all of the water contained in the water cooler to seep out.

Oasis also argues that there is insufficient evidence in the record to establish that any failure to warn on the part of Oasis was the proximate cause of the damages, because there is no evidence that A-Z provided its technicians with the instruction sheet about which Dudley testified; in support for its position, Oasis cites <u>Johnson v. Johnson Chemical Co., Inc.</u>, 183 A.D.2d 64, 70, 588 N.Y.S.2d 607, 611 (2d Dep't 1992) ("[A]s in any products liability case, the plaintiff in an action premised on inadequate warnings must prove causation."). Oasis Objections 17. But <u>Johnson</u> adopts the position that, in a products liability case, a defendant may not avoid liability on a failure to warn claim "solely on the basis that the plaintiff failed to read the warnings which were issued," <u>Johnson</u>, 183 A.D.2d at 71, 588 N.Y.S.2d at 611. (Johnson also confirms that "the failure to provide warnings gives rise to liability not only against the manufacturer, but against the distributor and retailer as well." <u>Id.</u>, 183 A.D.2d at 72, 588 N.Y.S.2d at 612). Thus, this argument is not persuasive.

negligence in the installation or maintenance of the water cooler
(including its filters), because A-Z claims that the individual
who performed that work, Francis Ravalier, was an independent
contractor.  After noting that this argument is based on
evidentiary contentions and is therefore not appropriately
considered in determining whether to grant Plaintiff's motion to
amend, the Report goes on to state that "[w]hether [Ravalier]
should be deemed an independent contractor, as A-Z argues, or an
employee is a factual issue" which "cannot be conclusively
resolved on the current record."  Report 30-31.

     The Court does not find the Report's conclusion on this
point to be clearly erroneous or contrary to law.  Generally, a
party who hires an independent contractor is not liable for the
negligent acts of that contractor.  See Rosenberg v. Equitable
Life Assur. Soc. of U.S., 79 N.Y.2d 663 , 668, 595 N.E.2d 840
(1992); Chainani v. Board of Educ. of New York, 87 N.Y.2d 370,
380-81, 663 N.E.2d 283 (1995).  However, "[w]hether a person is
an 'employee' or an 'independent contractor' is an ultimate fact
to be determined from the evidence itself."  Felice v. St. Agnes
Hosp., 65 A.D.2d 388, 396, 411 N.Y.S.2d 901 (2d Dep't 1978).
Accord Carrion v. Orbit Messenger, 192 A.D.2d 366, 368, 596
N.Y.S.2d 50 (1st Dep't 1993), aff'd, 82 N.Y.2d 742, 602 N.Y.S.2d

325 (1993); <u>Bermudez v. Ruiz</u>, 185 A.D.2d 212, 213, 586 N.Y.S.2d 258 (1st Dep't 1992).[21]

The Report points to the following evidence as creating a triable issue of fact as to Ravalier's status: although Ravalier owned his own company, he apparently worked steadily for A-Z, doing routine maintenance at A-Z's instructions, including servicing the Bank's water coolers.  Report 30-31 (citing Ravalier Dep. 32, 68; Breit Dep. 28).  In addition, Ravalier testified that: he formerly worked for A-Z; although Ravlier is currently self-employed, his company (called "Rav Trucking") had a contract with A-Z executed fifteen years ago; he reports to A-Z every morning for his work assignment; and A-Z provides him with whatever supplies he needs.  Ravalier Dep. 6-11, 32.  As support for its statement that the evidence shows only that Ravalier was an independent contractor, A-Z points to Ravalier's testimony that he pays Social Security taxes and make his own Workers' Compensation contributions, as well as testimony by A-Z's Vice-President that A-Z does not keep track of Ravalier's time.  A-Z

---

[21] A-Z objects that the Report's reliance on <u>Carrion v. Orbit Messenger, Inc.</u>, 82 N.Y.2d 742 (1993) is misplaced because that case addresses "whether an operator of a delivery vehicle was an agent or independent contractor."  A-Z Objections 4.  But <u>Carrion</u> applies, in a particular context, the "general rule," <u>see</u> <u>Bermudez v. Ruiz</u>, 185 A.D.2d 212, 213, 586 N.Y.S.2d 258 (1st Dep't 1992), originally stated in <u>Felice v St. Agnes Hosp.</u> (which involved physicians and a hospital), that determining whether an individual is an employee or an independent contractor is a factual issue.

Objections 4 (citing Ravalier Dep. at 32-33; Sperling Dep. 50).
As for how A-Z pays Ravalier, the latter testified at first that
A-Z pays him on a "flat pay day to day basis," but then stated
that A-Z pays him on a weekly basis.  Ravalier Dep. 32.

In light of this evidence in the record, the Court does not
find to be clearly erroneous or contrary to law the Report's
conclusion that there is a genuine issue of material fact
regarding whether Ravalier was an independent contractor or an
employee of A-Z, that cannot be resolved at this stage.  In
determining whether an individual is an independent contractor or
an employee, "no single factor alone [is] determinative."
Sirotkin Travel Ltd. v. Ross, 63 A.D.2d 1095, 406 N.Y.S.2d 380,
381 (3d Dep't 1978).  For example, whether or not an employer
withholds income taxes from an individual's paycheck, and/or pays
Social Security taxes or makes Workers' Compensation
contributions for the individual, are relevant factors, see,
e.g., Fernandez v. New York State and Local Retirement Systs., 17
A.D.3d 921, 922, 793 N.Y.S.2d 286, 287 (3d Dep't 2005), but not
determinative in and of themselves, see Etherington v. Empire
Improvements, Inc., 55 A.D.2d 762, 762-63, 389 N.Y.S.2d 459, 460
(3d Dep't 1976).  Rather, many factors are relevant, including
"the right to control the alleged employee's work, the method of
payment, the right to discharge and the furnishing of equipment."
Wald v. Avalon Partners, Inc., 23 A.D.3d 820, 803 N.Y.S.2d 329,

25

330 (3d Dep't 2005).  Ultimately, perhaps the most important factor is "whether the principal exercised control over the results produced by the alleged employee or the means used to achieve those results."  Roberts v. El-Hajal, 23 A.D.3d 733, 804 N.Y.S.2d 819, 820-21 (3d Dep't 2005).

A-Z further objects that, irrespective of whether Ravalier was an independent contractor, there is no evidence on the current record establishing a triable issue of fact as to whether Ravalier, or the technician who originally installed the filter, failed to lubricate the O-rings.  See A-Z Objections 2.[22]  As to this point, the Report again states that the reference to the factual record is inappropriate in opposing Plaintiff's motion to amend, but goes on to find that, "in any event, to the extent that [A-Z] is in effect arguing that the technician in question – who was not the individual (Ravalier) who regularly maintained the water cooler for the Bank – may have done such lubrication, that represents only speculation on a record that contains at least circumstantial evidence to the contrary."  Report 34 n.13.[23]  A-Z objects by essentially arguing the reverse: that

---

[22] A-Z makes this objection in the context of the Report's recommendation that A-Z's summary judgment motion against the Bank be denied; however, the objection is also relevant to the Report's recommendation as to Plaintiff's motion to amend the complaint to add claims against A-Z.

[23] The Report notes that "[i]n particular, Ravalier admitted never actually reading the installation sheet that accompanies

because the installation technician, Clive Byfiele, did not testify and has not been subpoenaed, the Court cannot speculate as to what he may or may not have done.  A-Z Objections 2.  But this objection is inapposite: the point made by the Report is that, although there is no direct evidence as to what Byfiele did, there is at least circumstantial evidence that he did not perform such lubrication.[24]

Thus, the Court finds that the Report's conclusion that Plaintiff may amend its complaint to add a claim of negligent installation and maintenance against A-Z is not clearly erroneous or contrary to law.

---

the filter (and that may have contained a reference to the use of a particular lubricant), and A-Z has proffered no evidence that it ever instructed its technicians to lubricate these filters"; furthermore, the parties have apparently not sought to subpoena the technician who installed the filter in February 2002 (and who no longer works for A-Z and is apparently now outside the jurisdiction of this Court).  Report at 34 n.13 (citing Sperling Dep. 63; Ravalier Dep. 15).

[24] A-Z also argues, in the context of its objections to the Report's recommendation regarding A-Z's summary judgment motion, that the Report relies unduly on the statement in Sperling's letter that "[it] was determined that the leak was caused by a burst filter in the water cooler."  A-Z Objections 3.  This argument has in large part already been addressed supra.  The Court does not find to be convincing any of the additional arguments made on this point by A-Z.  A-Z's argument that the statement was made to clarify that it was the filter in the water cooler, not the coffee machine, that leaked is inapposite, and A-Z's argument that the statement was "speculation" - because Sperling does not have personal experience with installing water coolers such as the one at issue here and changing their filters - is unfounded because Sperling stated what had apparently been "determined" by A-Z's technician, who did have such experience.

<u>Oasis</u>

Oasis does not object specifically to the Report's recommendation that Plaintiff be allowed to amend its complaint to add a claim against Oasis for negligent design and manufacture.  In any event, largely for the reasons already discussed in the previous section concerning design defect, the Court does not find to be clearly erroneous or contrary to law the Report's conclusion that Plaintiff may amend its complaint to add a claim of negligent design and manufacture – except in one respect.  Because the Report notes, and apparently accepts, Oasis's claim that it did not manufacture the filters, Report 34 n.14, the Court finds that insofar as the Report refers (without discussion) to allowing Plaintiff to add a claim of "negligent manufacture" against Oasis, Report 69, this is clearly erroneous as to the manufacturing of the <u>filters</u> themselves (but not of the water cooler).

### 2. A-Z's Motion to Amend

A-Z seeks to amend its third-party answer to assert a counterclaim for contractual indemnification against the Bank for the full amount of any recovery by Plaintiff.  As discussed below, the Court, in this Order, grants the Bank's motion for summary judgment and dismisses Plaintiff's claims against the Bank, and, therefore, dismisses the Bank's third-party complaints

against A-Z and Oasis.  A-Z's motion to amend its third-party answer against the Bank is therefore denied as moot.

――――――

### B. Summary Judgment Motions

Summary judgment is appropriate only when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Jeffreys v. City of New York, 426 F.3d 549, 553 (2d Cir. 2005). The moving party "bears the initial responsibility of informing the district court of the basis for its motion"; that responsibility includes identifying the materials in the record that the moving party believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp., 477 U.S. at 323. Once a motion for summary judgment is made and supported, the non-moving party must set forth specific facts to be tried.  See Anderson, 477 U.S. 242 at 248.  "[S]ubstantive law will identify which facts are material," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and a "material fact is 'genuine[]' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," id.; see also Mitchell v. Shane, 350 F.3d 39, 47 (2d Cir. 2003).  "When considering a

29

motion for summary judgment, a court must construe the evidence in the light most favorable to the nonmoving party, drawing all inferences in that party's favor."  Jeffreys, 426 F.3d at 553. But "[t]o defeat summary judgment . . . nonmoving parties 'must do more than simply show that there is some metaphysical doubt as to the material facts,'" id. (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)); rather, they must offer "hard evidence," and not merely "conclusory allegations or unsubstantiated speculation" to support their position, id. (internal quotation marks and citations omitted).

### 1. The Bank's Motion for Summary Judgment Against Plaintiff

The Bank has moved for summary judgment against Plaintiff pursuant to Rule 56 of the Federal Rules of Civil Procedure.  As stated in the Report, Plaintiff's complaint alleges that the Bank: 1) negligently installed, maintained, and serviced the water cooler system; 2) failed to exercise reasonable care in hiring a competent contractor to supply and maintain the water cooler system; and 3) "failed to properly manage and control its premises," "including . . . the water cooling system."  Report 4; Compl. ¶¶ 7-21.  The Report recommends denying the Bank's motion in part – insofar as Plaintiff bases its claims on the Bank's responsibility for acts or omissions of the independent

30

contractor it hired, A-Z – and granting it in part – as to Plaintiff's claim against the Bank for the negligent hiring of a contractor and insofar as Plaintiff's claims against the Bank are based on allegations that the Bank itself was negligent.

Plaintiff has filed no objections to the Report; indeed, it urges the Court to adopt the Report in its entirety.  Thus, Plaintiff appears to support the Report's recommendation as to the partial granting of the Bank's summary judgment motion – and in any event Plaintiff has been warned, by the Report, of the consequences of failing to file objections.  In any event, the Court finds that this portion of the Report is well-reasoned and free of any "clear error on the face of the record."  Fed. R. Civ. P. 72(b) advisory committee's note.

The Bank has filed objections to the portion of the Report recommending that the Bank's summary judgment motion be denied in part, insofar as Plaintiff bases its negligence claims against the Bank on the Bank's responsibility for acts or omissions of the independent contractor it hired, A-Z.  Thus, the Court reviews this portion of the Report de novo.

"It is fundamental that to recover in a negligence action a plaintiff must establish that the defendant owed him a duty to use reasonable care, and that it breached that duty."  Turcotte v. Fell, 68 N.Y.2d 432, 437, 502 N.E.2d 964, 967 (N.Y. 1986).  "In the absence of a duty, as a matter of law, no liability can

ensue." Gonzalez v. Pius, 138 A.D.2d 453, 454, 525 N.Y.S.2d 868, 869 (2d Dep't 1988).  Under New York law, "[t]he general rule is that an employer who hires an independent contractor is not liable for the independent contractor's negligent acts." Rosenberg v. Equitable Life Assur. Soc. of U.S., 79 N.Y.2d 663 , 668, 595 N.E.2d 840 (1992); see also Chainani v. Board of Educ. of New York, 87 N.Y.2d 370, 380-81, 663 N.E.2d 283 (1995) ("Ordinarily, a principal is not liable for the acts of independent contractors in that, unlike the master-servant relationship, principals cannot control the manner in which the independent contractors' work is performed.").  But "[f]or reasons of public policy, the employer's duty is sometimes held to be nondelegable and, though blameless, it is liable for the independent contractor's negligence."  Rosenberg, 79 N.Y.2d at 668.  The "generally recognized" exceptions to the general rule include "situations where the employer . . . is under a duty to keep premises safe."  Id.[25]  Plaintiff seeks to rely on this non-

---

[25] The other exceptions "involve situations where the employer . . . is under a statutory duty to perform or control the work, . . . is under a duty to keep premises safe, or . . . has assigned work to an independent contractor which the employer knows or has reasons to know involves special dangers inherent in the work or dangers which should have been anticipated by the employer." Rosenberg, 79 N.Y.2d at 668.

delegable exception to hold the Bank liable for the acts of its independent contractor A-Z.[26]

A property owner has a non-delegable duty to keep its premises safe when the owner invites others to enter and come upon his property.  Backiel v. Citibank, N.A., 299 A.D.2d 504, 506, 751 N.Y.S.2d 492, 494-95 (2d Dep't 2002).  Thus, "whenever the general public is invited into stores, office buildings and other places of public assembly," 299 A.D.2d at 507, 751 N.Y.S.2d at 495 (internal quotation marks and brackets omitted), "owners [of such properties] are charged with a non-delegable duty to provide members of the general public with a reasonably safe premises, including a safe means of ingress and egress," id. Accord Milligan v. Popular, 6 A.D.3d 272, 272-73, 776 N.Y.S.2d 237 (1st Dep't 2004); June v. Zikakis, 199 A.D.2d 907, 909, 606 N.Y.S.2d 390 (3d Dep't 1993); Thomassen v. J&K Diner, Inc., 152 A.D.2d 421, 423-25, 549 N.Y.S.2d 417, 417-18 (2d Dep't 1989).  In other words, the nondelegable duty of an owner to keep its premises safe is owed to individuals who are invited to, and do,

_____

[26] In its objections to the Report, the Bank quotes Chainani, which states: "The 'nondelegable duty' exception may be invoked where a particular responsibility is imposed upon a principal by statute or regulation or where the task at issue is inherently dangerous."  87 N.Y.2d at 381.  See Banco Espanol de Credito's Memorandum of Law (in support of its objections to the Report) ("Bank Objections") 2.  Although Chainani does not refer to the "safe premises duty" exception, Rosenberg and subsequent cases discussed infra indicate that this is another "non-delegable duty" exception.

come onto the premises – including, in the broadest extension of the duty, all members of the general public, when the public is invited onto the premises.

In this case, Plaintiff has not alleged, and does not point to any evidence, that the offices of the Bank were open to the public or that Plaintiff was within a category of persons "invited" to come into the Bank's office.  Thus, even if the Bank had a non-delegable duty to provide individuals invited into its offices with reasonably safe premises, that duty did not extend to Plaintiff (or its subrogor).[27]  Because there has been no showing that the Bank itself was negligent (or was negligent in hiring a contractor), and because the non-delegable duty exception does not apply here, the Bank's motion for summary

---

[27] "Inherent in the concept of duty is the obligation to use due care when another is within the zone of apparent danger[;] [i]f the injured party is not within this zone, he is not a foreseeable plaintiff and his injury cannot be legally or proximately caused by the act or omission of the defendant." Carrillo v. Kreckel, 43 A.D.2d 499, 501, 352 N.Y.S.2d 730, 732 (4th Dep't 1974).  The zone for the duty to keep premises safe is presumably encompassed by the premises (including areas of ingress and egress).  Conversely, even if Plaintiff were to argue that the damages to its property, as a result of an alleged failure on the part of the Bank to keep its premises safe, could be foreseeable, "'[t]he mere fact that a consequence might foreseeably result from an action or condition does not serve to establish a duty owing from a defendant to a plaintiff.'" McCarthy v. Olin Corp., 119 F.3d 148, 156 (2d Cir. 1997) (quoting Gonzalez v. Pius, 138 A.D.2d 453, 454, 525 N.Y.S.2d 868, 869 (2d Dep't 1988)).  "Foreseeability 'is applicable to determine the scope of duty – only after it has been determined that there is a duty.'" Id.  (quoting Pulka v. Edelman, 40 N.Y.2d 781, 785, 390 N.Y.S.2d 393, 396, 358 N.E.2d 1019, 1022 (1976)).

judgment against Plaintiff is granted, and Plaintiff's claims against the Bank are dismissed.

### 2. A-Z's and Oasis's Motions for Summary Judgment as to the Bank's Third-Party Claims and Any Cross-Claims

Because the Bank's motion for summary judgment against Plaintiff is granted in its entirety, the Bank is no longer a party to this action.  The Bank's third-party complaints are therefore dismissed.  The summary judgment motions filed by Oasis and A-Z, insofar as they seek dismissal of the Bank's third-party claims against Oasis and A-Z, are accordingly denied as moot.

But A-Z's and Oasis's motions for summary judgment also pertain to any cross-claims filed against A-Z and Oasis by each other.  Oasis has filed a cross-claim against A-Z for the "negligent, improper and inadequate installation and servicing of the cooler by which plaintiff claims to have sustained property damage."  Oasis's Verified Second Third-Party Answer 5.[28]  A-Z has filed a cross-claim against Oasis alleging that any damages caused to Plaintiff (that were not caused by Plaintiff's "own

---

[28] Oasis also purports to bring a second cross-claim against A-Z but does not actually state a second claim; rather, Oasis alleges, in this purported second cross-claim, that A-Z "was in sole control of installing and servicing the cooler with no installation or servicing done by . . . Oasis."  Id. at 6.

35

carelessness, recklessness, or negligence") "were sustained by reason of the carelessness, recklessness or negligence and/or acts of omission or commission of . . . Oasis."  A-Z's Reply to Cross-Claim and Cross-Claim ¶ 2.  The Report addresses A-Z's and Oasis's motions insofar as they seek summary judgment dismissing the Bank's third-party claims against them, and does not address these cross-claims separately.[29]  But, insofar as A-Z's and Oasis's arguments as to the cross-claims are incorporated into their arguments as to the Bank's third-party claims, the Report, in addressing the latter, implicitly recommends that A-Z's and Oasis's motions for summary judgment as to the cross-claims against them should not be granted.

In Section III.A.1.b of this Order, the Court has addressed the bulk of A-Z's and Oasis's objections to the Report's recommendation that their summary judgment motions be denied, because these objections overlap with A-Z's and Oasis's objections to the recommendation by the Report that Plaintiff be allowed to amend its complaint to add claims of products liability and negligence against A-Z and Oasis.

---

[29] Indeed, as to Oasis's motion, the Report states: "Oasis also sought in passing the dismissal of 'any crossclaims.'  We assume that it refers to possible cross-claims against A-Z, but it appears that A-Z never filed such a pleading."  Report 69 n.28 (citation omitted).  But, as noted above, A-Z does appear to have filed such a pleading, although the exact nature of the cross-claim is not entirely clear.

The only other argument that must be addressed here is
Oasis's contention that A-Z's failure to preserve the filter in
question precludes A-Z from advancing a products liability cross-
claim against Oasis (assuming that this is what A-Z's cross-
claim, as currently stated, purports to do) – or, in other words,
that, because A-Z has spoliated evidence, its cross-claim against
Oasis should be dismissed.  Spoliation has been defined as "'the
destruction or significant alteration of evidence, or the failure
to preserve property for another's use as evidence in pending or
reasonably foreseeable litigation.'"  Byrnie v. Town of Cromwell,
Bd. of Educ., 243 F.3d 93, 107 (2d Cir. 2001) (quoting West v.
Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999)).  A
district court has the power to impose sanctions on a party that
spoliates evidence.  West, 167 F.3d at 779.  "Although a district
court has broad discretion in crafting a proper sanction for
spoliation, . . . the applicable sanction should be molded to
serve the prophylactic, punitive, and remedial rationales
underlying the spoliation doctrine."  Id.  "The sanction should
be designed to: (1) deter parties from engaging in spoliation;
(2) place the risk of an erroneous judgment on the party who
wrongfully created the risk; and (3) restore 'the prejudiced
party to the same position he would have been in absent the
wrongful destruction of evidence by the opposing party.'"  Id.
(quoting Kronisch v. United States, 150 F.3d 112, 126 (2d Cir.

37

1998)).  A court may order the dismissal of a suit, on the basis

of spoliation, but "[d]ismissal is appropriate if there is a

showing of willfulness, bad faith, or fault on the part of the

sanctioned party,"[30] and, "because dismissal is a 'drastic

remedy,' it 'should be imposed only in extreme circumstances,

usually after consideration of alternative, less drastic

sanctions.'"  West, 167 F.3d at 779-80 (quoting John B. Hull,

Inc. v. Waterbury Petroleum Prods., Inc., 845 F.2d 1172, 1176 (2d

Cir. 1988)).  The Report finds that it appears that the A-Z

technician was responsible for disposing of the filter, but that

it is not clear that he realized, at the time, the potential

significance of the filter, Report 67-68; Oasis does not

specifically object to this finding, but rather appears to argue

that, even if the destruction of the filter was not intentional

but rather only negligent, any cross-claims brought by A-Z

against Oasis should nevertheless be dismissed.  Oasis Objections

12.[31]  As noted above, however, in the absence of a showing of

---

[30] This Circuit has not adopted a general rule as to, when a
party destroys evidence, what state of mind on the part of the
destroyer would warrant sanctions.  The states of mind the Court
of Appeals has found to warrant sanctions include gross
negligence, an intent to destroy, and bad faith; the Court of
Appeals has decided that a case-by-case approach is more
appropriate than a general rule.  Byrnie, 243 F.3d at 107-08.
Thus, in this context, "fault" should perhaps be understood more
specifically as referring to "gross negligence."

[31] As noted earlier, the Report addresses Oasis's motion for
summary judgment as it pertains to third-party claims brought by

willfulness, bad faith, or fault (amounting to gross negligence), it does not appear that dismissal would be appropriate; indeed, the Court finds that this case does not present "extreme circumstances" that would justify such a "drastic sanction." West, 167 F.3d at 779-80.

For the reasons stated in Section III.A.1.b of this Order, as well as the further reasons discussed above, the Court finds that, even considering the issues de novo, A-Z's and Oasis's motions for summary judgment, insofar as they pertain to any cross-claims, should be denied.

## IV. Conclusion

For the reasons stated above, the Court adopts the Report only in part. Plaintiff's motion to amend its complaint is granted in part and denied in part; the Bank's motion for summary judgment is granted; A-Z's motion to amend its third-party answer is denied as moot; and A-Z's and Oasis's motions for summary judgment are denied. Specifically, as to Plaintiff's motion to amend: Plaintiff may assert claims of products liability (including failure to warn), and negligent installation and

---

Oasis against the Bank, not as to any cross-claims brought by A-Z. Oasis's objections are likewise focused on the Bank's third-party claims, but Oasis also argues that any cross-claims brought by A-Z against Oasis should be dismissed based on this spoliation argument. Oasis Objections 10-13.

maintenance, against A-Z, and claims of products liability
(including failure to warn), and negligent design and
manufacture, against Oasis.


       SO ORDERED.

Dated:    New York, New York
          October 13 , 2006

                        Kimba M. Wood
               United States District Judge